FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 11 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WILLIAM BAEZ,

          Plaintiff,

- against -

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
------------------------------------------------------------x

OPINION & ORDER

16-cv-6372 (NG)

**GERSHON, United States District Judge:**

Plaintiff William Baez is a 52-year-old high school graduate who applied for Supplemental Security Income benefits on August 22, 2013, claiming that he became disabled on March 1, 2010. (Administrative Record ("AR") 178–86). Plaintiff's application was initially denied on October 21, 2013. (AR 86–89). Plaintiff then requested a hearing, which was held on February 18, 2015 before Administrative Law Judge Mark Solomon (the "ALJ"). (AR 90, 52–73). By decision dated April 21, 2015, the ALJ affirmed the denial of benefits. (AR 34–51). The ALJ found that plaintiff had severe physical impairments, but that plaintiff's mental impairments were non-severe. (AR 34–51). Despite plaintiff's physical impairments, the ALJ determined that he had the residual functional capacity to perform light work with non-exertional limitations. (AR 42–46).

On June 3, 2015, plaintiff requested review of the ALJ's decision by the Appeals Council. (AR 30–33). The Appeals Council considered additional materials, specifically a brief by plaintiff's counsel dated February 12, 2016 to the Appeals Council seeking to have the ALJ's decision vacated, records from Union Square Medical Imaging dated April 6, 2015, and multiple records from plaintiff's internist, Alvin Lindsay, M.D. (AR 4–10). On July 20, 2016, the Appeals

1

Council denied plaintiff's request for review, and the decision of the ALJ became the final decision of the defendant Commissioner of Social Security (the "Commissioner"). (AR 4–10).

On November 16, 2016, plaintiff commenced this action seeking reversal of the Commissioner's decision under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). On May 22, 2017, plaintiff moved for judgment on the pleadings to have the decision of the Commissioner remanded for a new hearing and decision. On July 21, 2017, the Commissioner submitted her opposition to plaintiff's motion and moved for judgment on the pleadings. Essentially, plaintiff challenges the ALJ's determination that he has no severe mental impairments; he argues that the ALJ improperly weighed the opinion of his treating physician and failed to properly evaluate plaintiff's credibility regarding his claimed mental impairments.

## STANDARD OF REVIEW

A district court's review of a Commissioner's final decision regarding disability is limited. Absent legal error, a finding by the Commissioner that a claimant is not disabled is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Thus, where the court finds that substantial evidence exists to support the Commissioner's determination, the decision will be upheld, even if contrary evidence exists. *See DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998). This standard applies not only to findings of fact but also to inferences and conclusions drawn from such facts. *D'Amato v. Apfel*, 2001 WL 776945, at *3 (S.D.N.Y. July 10, 2001).

A district court must also determine whether the ALJ applied the correct legal standards. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). An error of law that might have affected the

disposition of the case provides grounds for reversal. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Thus, I conduct a *de novo* review to determine whether the correct legal principles were applied and whether the legal conclusions reached by the ALJ were based on those principles. *See id.*

## DISCUSSION

### I. Whether the ALJ Failed to Properly Weigh the Medical Evidence

Plaintiff first argues that, despite a "low threshold requirement," the ALJ did not find a severe mental impairment because "the ALJ gave 'little weight' to the opinions from his treating psychiatrist Dr. [Fernando] Taveras." Plaintiff contends that the ALJ erred in placing "some weight" on the opinions of examining psychologist Haruyo Fujiwaki, Ph.D., and non-examining consulting psychologist, V. Reddy, Ph.D., instead of giving "controlling weight" to his treating physician. Plaintiff further argues that the ALJ's finding that Dr. Taveras's opinions conflict with "unremarkable status examinations" is "wholly rebutted by the record," and, as a result, the ALJ erred in finding that plaintiff has no severe mental impairment.

Plaintiff is correct that the Code of Federal Regulations establishes that a treating physician's opinion will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the Plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2). However, the deference afforded to a treating physician's opinion may be reduced upon consideration of other factors, including the length and nature of the treating doctor's relationship with the patient, the extent to which the medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors "which tend to ... contradict the opinion." *Micheli v. Astrue*, 501 Fed. Appx. 26, 28 (2d Cir. 2012)

3

(quoting 20 C.F.R. § 404.1527(c)(2)(i)–(ii) and (c)(3)–(6)); *accord Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Additionally, "[a] physician's opinions are given less weight when his opinions are internally inconsistent." *Micheli*, 501 Fed. Appx. at 28 (citing *Michels v. Astrue*, 297 Fed. Appx. 74, 75 (2d Cir. 2008)).

By way of background, plaintiff was first seen in Dr. Taveras's clinic by Mencia Gomez de Vargas, M.D., on February 26, 2014.[1] (AR 788–89). On that first date, Dr. Gomez de Vargas described plaintiff as "anxious," but his mood was "normal," his affect was "appropriate," his thinking was "logical," and his social judgment appeared "fair." (AR 788). Plaintiff also "convincingly denied symptoms of depression." (AR 788). When plaintiff was next seen by Dr. Gomez de Vargas on November 4, 2014, plaintiff "denie[d] any psychiatric problems or symptoms," and Dr. Gomez de Vargas noted that "[n]o signs of anxiety are present. Insight and judgment are intact." (AR 790). Plaintiff was again described as having "no signs of depression[.]" (AR 790). On December 3, 2014, plaintiff was seen by Yvanka Pachas, M.D., in Dr. Taveras's clinic. (AR 792–93). At that visit, plaintiff "report[ed] to be stable under present treatment." (AR 792). The following month, on January 5, 2015, plaintiff saw Dr. Taveras himself, for the first and only time, after the previous psychiatrist left the clinic. (AR 684). Dr. Taveras reported that "[s]igns of mild depression are present" and also noted that plaintiff had "difficulty sleeping." (AR 794). However, in that same visit, Dr. Taveras indicated that plaintiff was "fully communicative," and his "[v]ocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears fair. Social judgment appears fair. There are no signs of anxiety. There are no signs of hyperactive or attentional difficulties." (AR

---

[1] Plaintiff's brief states that Dr. Taveras evaluated plaintiff with Dr. Gomez de Vargas on February 26, 2014. The record does not support this statement.

4

794).

Nevertheless, Dr. Taveras completed a Mental Impairment Questionnaire dated February 19, 2015 in which Dr. Taveras indicated that multiple areas of plaintiff's mental capacity presented a "marked" degree of limitation, such as his concentration and persistence and social interactions. (AR 682–86). The Questionnaire also asked the preparing physician to "list and discuss any other clinical findings which support your diagnosis and assessment." (AR 684). In response, Dr. Taveras provided only that plaintiff "has described his mood as depressed and anxious." (AR 684).

Upon review of the record, I conclude that the ALJ did not err in declining to give controlling weight to Dr. Taveras's opinion because nothing in Dr. Taveras's statements on the Questionnaire or in the treatment notes supports Dr. Taveras's opinion that plaintiff had "marked" limitations in his understanding, memory, concentration, social interactions, or adaptation. Dr. Taveras's opinion was also inconsistent with the bulk of plaintiff's medical records, as well as plaintiff's own testimony at the hearing. Specifically, plaintiff's lengthy medical records frequently describe him as having a stable mood, appropriate affect, and logical thought processing. He is typically described as having anxiety that is appropriately controlled by medication, and the only visits where his anxiety is *not* under control appear to coincide with changes to his medication, such as changes to prescriptions or his loss of previously filled prescriptions. Those appointments mentioning anxiety coincide with plaintiff running out of his preferred medication, and the anxiety is not mentioned in the intervening appointments where his physical ailments alone are addressed. Moreover, the records amply indicate that there were no side effects from the medication. At the hearing, plaintiff credibly explained how he was able to perform a variety of tasks, including shopping, laundry, and cooking, and able to live with

roommates. (AR 57–62). Notably, the only specific reference to his mental impairment at the hearing was a statement that when he engages in social interactions, he "get[s] panicked. [He] get[s] anxiety and [has] difficulty relating because [he has] bipolar disorder." (AR 63).

The ALJ was permitted to consider the internal inconsistencies between Dr. Taveras's opinion and his treatment notes and the inconsistencies between Dr. Taveras's opinion and the records of the other treating and consulting physicians, and then to assign less weight to Dr. Taveras's opinion as a result. *Vanterpool v. Colvin*, 2014 WL 1979925, at *16 (S.D.N.Y. May 15, 2014); *accord Camille v. Colvin*, 104 F. Supp. 3d 329, 341 (W.D.N.Y. 2015), *aff'd*, 652 Fed. Appx. 25 (2d Cir. 2016); *Montaldo v. Astrue*, 2012 WL 893186, at *15 (S.D.N.Y. Mar. 15, 2012).

There are some medical records that suggest a greater degree of impairment than the ALJ found. Dr. Fujiwaki, a psychologist, found moderate impairments in plaintiff's ability to learn new tasks and to perform complex tasks independently and found that he could work only in a "structured environment." (AR 508–11). Additionally, Dr. Lindsay, an internist, opined that plaintiff could not work in part as a result of his mental impairments. (AR 808–09). Plaintiff also points to approximately a dozen records in which he is described as depressed and/or irritable. Most of those records, however, describe plaintiff as "mildly depressed" and thus do not compel a finding that he has a severe impairment. As a result, the ALJ did not err in concluding that the record as a whole did not support Dr. Taveras's opinion.

In addition, while Dr. Taveras stated in his Questionnaire that he saw plaintiff monthly for a year, the records reflect that plaintiff was seen only three times by other doctors in Dr. Taveras' clinic from February 2014 through December 2014 and by Dr. Taveras himself once on January

5, 2015.[2] (AR 788–95). Accordingly, the rationale for the presumption of controlling weight—continuity of treatment and doctor/patient relationship development—is not applicable here. In fact, the opinions of Dr. Taveras and Dr. Fujiwaki are each based on a single visit with plaintiff and review of his medical records.

I agree with plaintiff that the ALJ's decision to give "some weight" to the opinion of Dr. Reddy, the non-examining consulting psychologist, is troubling, especially in light of other available examining medical professionals. However, given the weight of the other evidence, I find that the ALJ would have reached the same conclusion even if he had given no weight to Dr. Reddy.

It is true, as plaintiff argues, that the standard for finding a mental impairment to be severe is modest. However, as the Commissioner argues, even if the ALJ erred in finding plaintiff's mental impairment non-severe, "this error was harmless, as the ALJ considered both [plaintiff's] severe and non-severe impairments as he worked through the later steps." *Rivera v. Colvin*, 592 Fed. Appx. 32, 33–34 (2d Cir. 2015). While the ALJ did not find that plaintiff has a severe mental impairment, he considered his mental limitations in determining plaintiff's ability to work. Specifically, he provided the vocational expert with a hypothetical for a person who could only do "simple, repetitive work." (AR 68–69). As a result, the residual functional capacity finding reflects the degree of limitation the ALJ found in the mental function analysis.

I therefore conclude that the ALJ's decision to discount the weight afforded Dr. Taveras's opinion and his determination that plaintiff does not have a severe mental impairment are without

---

[2] The record contains notations of prescriptions written by Dr. Gomez de Vargas on April 9, 2014 and June 2, 2014, but no medical records indicating visits on those dates. (AR 790–91). However, even if those dates reflect visits of plaintiff to Dr. Gomez de Vargas (as opposed, for example, to a simple prescription refill), they would not change my opinion regarding the weight given to Dr. Taveras's opinion by the ALJ.

7

legal error and are supported by substantial evidence.

**II.     Whether the ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff also argues that the ALJ erred by using "boilerplate" language to indicate that he found plaintiff's statements to be "not entirely credible," without making any "credibility findings related to [plaintiff's] statements on his psychiatric impairments[.]" According to plaintiff, he "gave detailed testimony on his depressive symptoms and resulting limitations, his limited activities of daily living, and his lack of significant or sustained response to treatment," but the ALJ "failed to consider any of the seven factors in the Regulations regarding [plaintiff's] medically determinable impairment of depression."

As an initial matter, nothing in plaintiff's testimony regarding his daily living and claimed lack of significant or sustained response to medical treatment required a finding of severe mental impairment. Nevertheless, the ALJ did specifically support his finding that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 43). For example, the ALJ's decision mentions that plaintiff's history of drug arrests, while "clearly not dispositive on the issue of disability, [does] bear[] upon his credibility as to why he is or has been unable to work." (AR 43). In fact, when examined by psychiatrist James McKnight, M.D., on January 4, 2014, plaintiff reported that his social isolation was not the result of his medical condition but, rather, "because many in the neighborhood still believe that he sells drugs." (AR 522). Additionally, the ALJ cited specific medical records evincing normal mental health status evaluations at times when plaintiff claimed he was fully disabled. So, while the ALJ does use the boilerplate phrase "not entirely credible," he provided specific reasons for his finding on credibility, supported by the evidence in the case record.

8

## CONCLUSION

Based on review of the record as a whole, the final decision of the Commissioner is based upon the correct legal standards and is supported by substantial evidence. For the foregoing reasons, the Commissioner's motion is granted and plaintiff's motion is denied. The Clerk of Court is directed to enter judgment in favor of defendant.

SO ORDERED.

/s/ Nina Gershon
**NINA GERSHON**
**United States District Judge**

March 11, 2019
Brooklyn, New York